1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GEORGE GOINGS,

11              Petitioner,              No. CIV S-08-2135 WBS CHS P

12        vs.

13   DENNIS K. SISTO, et al.,

14              Respondents.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   I.      INTRODUCTION

17              Petitioner George Goings is a state prisoner proceeding pro se with a petition for a

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the November 8,

19   2006, decision by the Board of Parole Hearings (hereinafter Board) finding him unsuitable for

20   parole.  Upon careful consideration of the record and the applicable law, the undersigned will

21   recommend that this petition for habeas corpus relief be denied.

22   II.     FACTS

23              The Board recited the facts of the commitment offense as follows:

24              PRESIDING COMMISSIONER ENG: The defendant and
             codefendant Dyetria Lorrayne Jones, D-Y-E-T-R-I-A, Lorrayne,
25           L-O-R-R-A-Y-N-E, last name, J-O-N-E-S, were involved in three
             robberies in which a knife was used and on the third robbery the
26           victim was killed.  In July of 1985 victim Nicholis, N-I-C-H-O-L-

1

I-S, Dyer, D-Y-E-R, related to police that he was at his residence at about 10:00 a.m. that codefendant Jones and her male companion, Goings, came to his residence and borrowed $2. Shortly thereafter, about 12 o'clock noon, they returned and defendant Goings placed a knife at his throat and demanded money. Defendant Goings made two small cuts on the victim's neck and struck him on top of the head with the knife handle. The defendant Goings then removed $10 from the victim's wallet and both suspects fled the location. With regard to the second robbery, victim Jay, J-A-Y, Hill, H-I-L-L, indicated to police that on September 3rd, 1985, at approximately 7:00 p.m. that defendant Jones obtained a kitchen knife and placed it at the victim's neck at which time defendant Goings removed $125 from the victim's pocket. The victim stated he received two small superficial knife cuts to his neck during the robbery. With regard to the third robbery in this matter, victim Goethe, G-O-E-T-H-E, was found dead in his apartment on September 5th, 1985, at approximately 8:00 p.m. at 2901 Palmgrove, P-A-L-M-G-R-O-V-E, Avenue in Los Angeles. An examination of the victim's body revealed that he had been stabbed nine times to his chest, two of which were fatal. The victim sustained additional injuries consisting of two superficial knife wounds to the neck, four superficial knife wounds to the right wrist, and blunt force trauma or knife wounds to the top of his head. The resident's telephone cord had been disconnected and was wrapped around the victim's left wrist and neck. A belt was also tied around the victim's neck. A bloodstained steak knife was observed lying between the victim's legs and a butcher knife was observed lying on the couch adjacent to the victim. The residence had been partially ransacked and the victim's television had been taken. The victim's wallet also was lying open on the bedroom dresser and contained no money. There was no forced entry to the residence observed. Subsequent investigation from statements of witnesses and landlord [sic] in this matter revealed that codefendant Jones had befriended victim Goethe and both defendant's landlord had helped them sell the victim's television and clothes they had taken from his residence. Subsequent investigation led to the arrest of both the defendant and codefendant in this case due to statements from witnesses, landlords, and positive identification by the first two victims in this matter.

/////

Petition at 57-59.

Sometime in 1986 a jury found petitioner guilty of first degree murder, two counts of robbery of an inhabited dwelling, and an enhancement for the use of a deadly weapon. Petition at 46. He received a sentence of 25 years to life, plus eight years and four months. Id.

/////

2

III.    <u>ISSUES</u>

     A.    <u>PROCEDURAL BACKGROUND</u>

          All issues raised in this petition were exhausted in state court proceedings. Petitioner filed a petition for writ of habeas corpus in the Los Angeles County Superior Court on or around April 10, 2007. Answer, Exhibit 1 at 23. That petition was denied in a reasoned opinion on September 21, 2007. Answer, Ex. 2 at 2-5. Petitioner then filed a petition in the California Court of Appeal, Second Appellate District on November 1, 2007. Answer, Ex. 3 at 2. That petition was denied on November 9, 2007. Answer, Ex. 4 at 2. Petitioner then filed a petition in the California Supreme Court on March 21, 2008. Answer, Ex. 5 at 2. That petition was summarily denied on August 27, 2008. Answer, Ex. 6 at 2. Finally, petitioner filed this federal petition on September 11, 2008.

     B.    <u>CLAIMS</u>

          The petition raises five issues as follow, verbatim:

1.    Petitioner contends that he is being denied his liberty interest right by the Board of Parole Hearings without some evidence to deny parole to petitioner based upon erroneous parole procedures in violation of the state and federal constitution.

2.    The Board of Parole Hearings is charges with determining the parole suitability of prisoners serving indeterminate life term sentences; the Board of Parole Hearings has set forth "guidelines" to aid in its suitability determinations 15 CCR 2281 & 2402.

3.    Petitioner's positive efforts overt twenty one years supports suitability for parole and outweigh all negative factors of unsuitability for parole.

4.    Petitioner's life sentence has been altered by the Board to resemble a sentence of life without the possibility of parole or death, thus constitutes an ex-post facto application of the law.

5.    Response to superior court denial of habeas corpus the state court decision contradict [sic] the only clearly established federal law addressing the federal protections for inmates in the parole process.

/////

IV.    <u>APPLICABLE STANDARD OF HABEAS CORPUS REVIEW</u>

          A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860,

861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>See</u> <u>also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).  The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).

/////

/////

/////

V.    <u>DISCUSSION</u>[1]

    A.    <u>Ex Post Facto</u>

        1)    <u>Description of Claim</u>

Petitioner argues that by denying him parole the Board has "altered" his sentence, from life with the possibility of parole, to life without the possibility of parole.  Petition at 5.  He argues this is an "ex-post facto application of the law."  <u>Id.</u>

        2)    <u>Applicable Law and Analysis</u>

Petitioner's claim fails for multiple reasons.  First, Article I of the United States Constitution provides that neither Congress nor any state shall pass an ex post facto law.  U.S. Const. Art. I, § 9, cl. 3, Art. I, § 10, cl. 1.  Hence, the Ex Post Facto Clause, by definition, applies to the Legislative Branch, not to the courts or an administrative body, such as the Board of Parole Hearings.  <u>See</u> <u>Rogers v. Tennessee</u>, 532 U.S. 451, 460 (2001) (holding "[t]he Ex Post Facto Clause, by its own terms, does not apply to courts"); <u>Marks v. United States</u>, 430 U.S. 188, 191 (1977) (holding "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.") (citations omitted)); <u>Lagrand v. Stewart</u>, 133 F.3d 1253, 1260 (9th Cir. 1998) (holding "[t]he Ex Post Facto Clause does not apply to court decisions construing statutes."), <u>cert</u>. <u>denied</u>, 525 U.S. 971 (1998).

Moreover, the Board has not increased petitioner's punishment.  The Ex Post Facto Clause prohibits the retrospective application of criminal statutes that change the definition of a crime or enhance the punishment for a criminal offense.  <u>See</u> <u>Collins v. Youngblood</u>, 497 U.S. 37, 41 (1990) ("Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact,' it has long been recognized ... that the constitutional

---

[1] The petition raises five issues.  All issues except issue four rely on a claim of the denial of Constitutional due process.  Those issues will therefore be combined and analyzed as one issue.  Issue four will be analyzed separately.

prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender

affected by them.")  Petitioner was sentenced to a term of 25 years to life, plus eight years and

four months. While petitioner might have hoped or expected to be released sooner, the maximum

duration of his commitment was set at life in prison long before he appeared before the Board.

The Board's decision to deny him a parole release date therefore did not enhance or otherwise

alter his punishment.

The Board's decision denying petitioner parole did not violate the Ex Post Facto

Clause and his claim should be denied.

B.   Due Process

1)   Description of Claim

Petitioner argues that the Board's denial is without "some evidence" to support it

and therefore is a violation of his liberty interest in parole.  Petition at 5.  He argues that in

reaching its determination the Board failed to reference the necessary guidelines and that his

positive efforts "outweigh all negative factors of unsuitability."  Id.

2)   State Court Opinion

The Los Angeles County Superior Court rejected petitioner's claim finding "some

evidence to support the Board's findings that petitioner pose[d] an unreasonable risk of danger to

society and, [was] therefore, unsuitable for parole."  Answer, Ex. 2 at 3.

3)   Applicable Law And Discussion

The Due Process Clause of the Fourteenth Amendment prohibits state action that

deprives a person of life, liberty, or property without due process of law.  A person alleging due

process violations must first demonstrate that he or she was deprived of a liberty or property

interest protected by the Due Process Clause and then show that the procedures attendant upon

the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v.

Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir.

2002).

1    A protected liberty interest may arise from either the Due Process Clause of the

2  United States Constitution or state laws.  Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).

3  The United States Constitution does not, of its own force, create a protected liberty interest in a

4  parole date, even one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981).

5  However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

6  parole release will be granted' when or unless certain designated findings are made, and thereby

7  gives rise to a constitutional liberty interest."  McQuillion, 306 F.3d at 901 (quoting Greenholtz

8  v. Inmates of Nebraska Penal, 442 U.S. 1, 12 (1979)).  In this regard, it is clearly established that

9  California's parole scheme provides prisoners sentenced in California to a state prison term that

10  provides for the possibility of parole with "a constitutionally protected liberty interest in the

11  receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of

12  the Due Process Clause."  Irons v. Carey, 505 F.3d 846, 850-51 (9th Cir. 2007) (citing Sass v.

13  Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910,

14  914 (9th Cir. 2003); McQuillion, 306 F.3d at 903; and Allen, 482 U.S. at 377-78 (quoting

15  Greenholtz, 442 U.S. at 12)).  Accordingly, this court must examine whether the deprivation of

16  petitioner's liberty interest in this case violated due process.

17    It has been clearly established by the United States Supreme Court "that a parole

18  board's decision deprives a prisoner of due process with respect to this interest if the board's

19  decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing

20  Superintendent v. Hill, 472 U.S. 445, 457 (1985)); see also Biggs, 334 F.3d at 915 (citing

21  McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457.

22    "The 'some evidence' standard is minimally stringent," and a decision will be

23  upheld if there is any evidence in the record that could support the conclusion reached by the

24  fact-finder.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d

25  703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

26  However, "the evidence underlying the [ ] decision must have some indicia of reliability."

7

1   Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v.

2   Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992).  Determining whether the "some evidence"

3   standard is satisfied does not require examination of the entire record, independent assessment of

4   the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at 1105.  The

5   question is whether there is any reliable evidence in the record that could support the conclusion

6   reached.  Id.

7            In finding petitioner unsuitable for parole, the Board relied upon: a) the

8   circumstances of the commitment offense, b) his escalating pattern of criminal conduct, c) his

9   institutional behavior, and d) his lack of adequate parole plans.

10                     a)      Circumstances of The Commitment Offense

11          With respect to the circumstances of the commitment offense the Board stated:
            The commitment offense, the offense was carried out in [an]
12          especially cruel and/or callous manner.  Multiple victims were
            attacked, injured and/or killed in the same or separate incidence,
13          and this is based on the three separate counts, the two robberies
            and then the murder.  The offense was carried out in a
14          dispassionate and/or calculated manner such as an execution style
            murder, the victim was abused, defiled and/or mutilated during or
15          after the offense.  The offense was carried out in a manner which
            demonstrates an exceptionally callous disregard for human
16          suffering.  The motive for the crime was inexplicable or very
            trivial in relation to the offense.

17   /////

18   Petition at 127.  The Los Angeles County Superior Court found that some evidence supported

19   this finding.  Answer, Ex. 2 at 3.

20            The circumstances of the commitment offense are one of fifteen factors relating to

21   an inmate's unsuitability or suitability for parole under California law.  Cal. Code. Regs., tit. 15,

22   § 2402(c)(1)-(d).  When denial is based on these circumstances the California courts have stated

23   that:

24          A prisoner's commitment offense may constitute a circumstance
            tending to show that a prisoner is presently too dangerous to be
25          found suitable for parole, but the denial of parole may be
            predicated on a prisoner's commitment offense only where the
26          Board can "point to factors beyond the minimum elements of the

8

crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. [In re] Dannenberg, 34 Cal.4th [1061] at 1071, 23 Cal.Rptr.3d 417, 104 P.3d 783 (Cal.2005). Factors beyond the minimum elements of the crime include, inter alia, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code. Regs., tit. 15 § 2402(c)(1)(B), (D)-(E)."

Irons, 505 F.3d at 852-53; see also In re Weider, 145 Cal.App.4th 570, 588 (2006) (to support denial of parole, the "factors beyond the minimum elements of the crime" "must be predicated on "some evidence that the particular circumstances of [the prisoner's] crime-circumstances beyond the minimum elements of his conviction-indicated exceptional callousness and cruelty with trivial provocation, and thus suggested he remains a danger to public safety.")

Such circumstances may include "rehearsing the murder, executing of a sleeping victim, stalking," id., or evidence that the defendant "acted with cold, calculated, dispassion, or that he tormented, terrorized or injured [the victim] before deciding to shoot her; or that he gratuitously increased or unnecessarily prolonged her pain and suffering." In re Smith, 114 Cal.App.4th 343, 367 (2003).

The relevant inquiry however "is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are probative to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor." In re Lawrence, 44 Cal.4th 1181, 1221 (Cal. 2008); In re Dannenberg, 34 Cal.4th 1061, 1070-71 (Cal. 2005).

Petitioner committed two robberies and a murder over a two month period. Petition at 128. During the first two robberies petitioner used a knife to make superficial cuts to each victim's neck. Id. The murder victim was found bound with a telephone cord and with a belt around his neck. Id. The victim had been stabbed nine times in the chest and had several other superficial and blunt force injuries. Id. The victim's residence had been partially

9

ransacked and his television had been stolen.  Id.  Petitioner claimed the victim was alive and standing after the stabbing, yet he never sought aid for the victim.

While it is true that the continued reliance over time on unchanging factors such as the circumstances of the commitment offense may result in a due process violation, a parole denial based solely on unchanging factors can initially satisfy due process requirements.  Biggs, 334 F.3d at 916.  In Irons, the Ninth Circuit explained that Biggs represents the law of the circuit that continued reliance on a prisoner's commitment offense or conduct prior to imprisonment could result in a due process violation over time.  Irons, 505 F.3d at 853.  Nevertheless, the court held that, given the egregiousness of the commitment offense, due process was not violated when the Board deemed a prisoner unsuitable for parole prior to expiration of his minimum term.  Id. at 846.

Under the most favorable calculation of petitioner's sentence, beginning on the date of his incarceration and applying only his 25 year term, the minimum term of his sentence will not expire until 2011.  The November 8, 2006 hearing was in fact petitioner's first.  Petition at 46.

Conversely, petitioner's commitment offense involved multiple robberies and a murder.  As a result there were multiple victims.  The murder victim was bound, mutilated and executed, demonstrating an exceptionally callous disregard for human suffering.  Given the egregiousness of his commitment offense, and the fact that this was petitioner's initial parole consideration hearing, due process was not violated when the Board deemed him unsuitable for parole prior to the expiration of his minimum term.

Further, the Board's conclusions regarding the circumstances of the commitment offense are supported by evidence.  More importantly, the identified facts were probative to the central issue of petitioner's then current dangerousness when considered in light of the full record before the Board.  That record included his escalating pattern of criminal conduct, his institutional behavior and his lack of adequate parole plans.

1   /////

2                             b)      <u>Escalating Pattern of Criminal Conduct</u>

3             In finding petitioner unsuitable for parole, the Board cited his escalating pattern

4   of criminal conduct.  Petition at 128-29.  The Los Angeles County Superior Court found some

5   evidence to support that finding. Answer, Ex. 2 at 3.

6             The Board found that petitioner had "a litany of adult convictions and arrests"

7   stating:

8         I think I had counted approximately 18 years or yeah, about 18
9         years of arrests that [in] total looks like about 16 different
      incidences over an 18 year period from 1968 through 1986.  And
10        basically, we see, like starting in October of 1968, robbery in the
      first, and then burglary, possession of dangerous drugs.  You were
11        arrested for forgery of a U.S. Treasury Checks, but no disposition.
      Possession of stolen mail, this was in January of 1970, you were
12        arrested for possession of stolen mail and placed on two years
      probation.  And then a few months later on March 26, 1970, you
13        were arrested by [the] Los Angeles Police Department for
      possession of dangerous drugs, no disposition, 1970 was a busy
14        year for you.  And then again in June you were arrested by the Los
      Angeles Sheriff's Office for grand theft auto, however, you were
15        released.  Then in January of 1971 you were arrested by LAPD for
      burglary, and I don't - -doesn't state a disposition on that one.
16        Then in May, five months later, you were arrested due to the
      Bureau of Identification in Sacramento for - - maybe that was it - -
17        for Penal Code 211 robbery in the first.  And at that time you were
      sentenced to State Prison for five years to life; however, you were
18        paroled to Los Angeles County on March 20th of 1973.  A few
      months later on July 14th of '73, you were arrested again by LAPD
19        for forgery, but there wasn't any disposition in that case.  A little
      over a year later, November '74, you were again arrested by LAPD
20        for possession of drugs for sale, but the prosecution rejected the
      case.  Then in January of '95[ sic] arrested by LAPD for receiving
21        stolen property, D.A. rejected the case.  Then quite a few years
      before you had June 17th of 1983 you were arrested by [the] Long
22        Beach Police Department for trespassing; you were subsequently
      convicted and sentenced to 12 months probation and a fine.  Then
23        on June 28th, 1984, about a year later, you were arrested by
      Norwalk Sheriff's Office for [being] under the influence of a
24        controlled substance and failure to appear.  Apparently, you were
      convicted of a Health and Safety 11550(A.)  The proceedings were
25        suspended and the case was diverted.  Then in [sic] September of
      [sic] 25th of '85 you were arrested for robbery, Penal Code 211, by
26        the LAPD and that led to your subsequent conviction of murder in
      the first and then the two robbery of the inhabited dwelling

1      charges, and then the use of a deadly weapon, where you ended up
       being sentenced again to 25 years to life plus eight years four
2      months for the enhancements.

3  Petition at 64-66.

4          Under California law, the Board is authorized to consider "any other information

5  which bears on the prisoner's suitability for release."  Cal. Code. Regs., tit. 15, § 2402(b).

6   A criminal history showing sixteen different incidents involving numerous crimes, including

7  possession of dangerous drugs, possession of stolen mail, burglary and robbery, is relevant

8  information bearing upon a prisoner's suitability for release.  That information is particularly

9  relevant when these incidents resulted in previous prison terms, and failed grants of probation

10 and/or parole.

11         The Board's conclusion regarding petitioner's escalating pattern of criminal

12 conduct is supported by evidence.

13 /////

14                  c)      Institutional Behavior

15         In support of its finding of unsuitability the Board cited petitioner's institutional

16 behavior.  Petition at 130.  The Board noted that petitioner had ten 128(A) counseling chronos,

17 the most recent one coming in 2002.[2]  More importantly petitioner had received two 115

18 disciplinary reports.[3]  Id.  While the most recent one dated back to 1993, that 115 was the result

19 of a physical altercation with a weapon.  Id.

20         Under California law, institutional behavior that evidences "serious misconduct"

21 at any time is a circumstance tending to show unsuitability.  See Cal. Code Regs. tit. 15, §

22 2402(c)(6).  While petitioner's institutional record has been free of 115s since 1993, a physical

23

24         [2] A 128 is issued when similar minor misconduct recurs after verbal counseling or if
   documentation of minor misconduct is needed.  Cal. Code Regs. tit. 15, § 3312(a)(3).

25

26         [3] A 115 "Rules Violation Report" documents misconduct "believed to be a violation of
   law or [that] is not minor in nature ."  Cal. Code Regs. tit. 15, § 3312(a)(3).

1    altercation with a weapon is serious misconduct.  Based on that misconduct, and the ten 128s,

2    the Board's finding with respect to petitioner's institutional behavior is supported by evidence.

3                              d)    Parole Plans

4            The Board found that petitioner lacked realistic parole plans, stating:

5            Regarding your parole plans, sir, we feel that you lack realistic
             parole plans at this point in time, in that you do not have viable
6            residential plans, you also do not have acceptable employment
             plans, and that you do not have a marketable skill.  And again, it's
7            a new skill that would be appropriate to your current physical and
             health condition that would be more appropriate.  And again, we
8            discussed this earlier how important it is to make sure that you
             really take a look and document the different areas that are most
9            realistic for you to be able to do in terms of, you know, residential,
             very specific letters.  Okay?  Financial support.  In terms of your
10           employment, even though you've had a lot of years with the
             Teamsters to go back and be a truck driver may not be physically
11           possible for you to so, so what are the alternatives for you possibly
             within the, you known [sic], still being in the union and for you to
12           possibly explore other areas.  Again, cover as many options as you
             can.

13   ////

14   Petition at 131-32.

15           Petitioner informed the Board that during his incarceration he never completed

16   any vocational program.  Id. at 78.  He stated that his decision was based on the fact that he had

17   already worked in many trades prior to his incarceration, including working as a molder, painter,

18   tow operator and truck driver.  Id. at 79-82.  Upon his release petitioner hoped to return to the

19   Teamsters, however he also indicated that he was "getting old" and "falling apart."  Id. at 82, 97.

20           With respect to a residence, petitioner planned to "rely mostly on the Veterans

21   Administration and [his] daughter," as well as "friends, associates" he can seek help from.  Id. at

22   94.  Petitioner did not however have a confirmed residence with the Veterans Administration and

23   he was unable to live at his daughter's home.  Id. at ,100.

24           While the lack of adequate parole plans is not a stated factor indicating

25   unsuitability, under California law the Board may consider "any other information which bears

26   on the prisoner's suitability for release."  Cal. Code. Regs., tit. 15 § 2402(b).  At the time of the

                                              13

1    hearing, petitioner had not completed any vocational training programs and was without a

2    confirmed residence.  The challenges an inmate faces upon parole are tremendous.  Those

3    challenges are likely insurmountable if the inmate does not have a strong path to employment or

4    a confirmed residence.

5            The Board's finding that petitioner's parole plans were inadequate is supported by

6    evidence.

7    V.    CONCLUSION

8            The facts of petitioner's commitment offense were probative to his current

9    dangerousness when considered in light of the full record before the Board.  That record

10   included his escalating pattern of criminal conduct, his institutional behavior and his lack of

11   adequate parole plans.

12           Petitioner had a lengthy criminal history involving possession of dangerous drugs,

13   forgery, stolen mail, burglary and robbery.  His criminal behavior escalated until the

14   commitment offense which involved multiple robberies and murder.  The murder victim was

15   bound, beaten, stabbed multiple times, and left without aid.

16           While incarcerated petitioner's behavior appears to have improved.  Nevertheless

17   he was involved in a physical altercation with a weapon in 1993 and failed to complete any

18   vocational training.  His parole plans were inadequate, lacking reliable employment or a

19   confirmed residence.

20           Based on this record there was evidence to support the Board's conclusion that at

21   the time of the hearing petitioner was unsuitable for parole.  The state court's rejection of this

22   claim was neither contrary to, nor an unreasonable application of, clearly established federal law

23   and petitioner is not entitled to relief on his due process claim.

24           Further the Board's decision did not enhance or otherwise alter his punishment.

25   Accordingly, the Board's decision did not violate the Ex Post Facto Clause.  Petitioner is

26   therefore not entitled to relief on his ex post facto claim.

1    Accordingly, IT IS RECOMMENDED that petitioner's petition for a writ of

2    habeas corpus be denied.

3    These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5    days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8    shall be served and filed within ten days after service of the objections.  The parties are advised

9    that failure to file objections within the specified time may waive the right to appeal the District

10   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11   DATED: December 3, 2009

12   _Charlene H. Sorrentino_
     CHARLENE H. SORRENTINO
13   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26